IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH M. MORRIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-0577 |
| | § | |
| TRANS UNION LLC, | § | |
| | § | |
| Defendant. | § | |

## ORDER ADOPTING MAGISTRATE JUDGE'S
## MEMORANDUM AND RECOMMENDATION

In July 2005, Magistrate Judge Johnson issued a detailed and thorough Memorandum and Recommendation, (Docket Entry No. 56), in this Fair Credit Reporting Act Case. This case was referred to Judge Johnson with two other similar cases filed by plaintiff Kenneth M. Morris. In each of the cases, Morris alleged that consumer reporting agencies failed to comply with their statutory obligation to reinvestigate disputed items on his credit reports. Morris also asserted a cause of action for libel.

Judge Johnson recommended granting defendant Trans Union LLC's motion for summary judgment; denying Trans Union's motion to strike Morris's summary judgment response evidence; overruling Morris's objections to Trans Union's summary judgment evidence; and denying the remaining motions as moot. Morris filed timely objections to the Magistrate Judge's Memorandum and Recommendation. (Docket Entry No. 58). Defendant Trans Union asked this court to adopt the Memorandum and Recommendation but, in the

event this court did not do, objected on the ground that the Magistrate Judge did not recommend granting summary judgment on the alternative ground that the credit reporting of the account at issue was accurate as a matter of law. (Docket Entry No. 56). Trans Union also responded to Morris's objections. (Docket Entry No. 60).

After a *de novo* review of the Magistrate Judge's Memorandum and Recommendation and the objections and response, this court overrules Morris's objections and adopts the Memorandum and Recommendation. The reasons are set out below.

**I.     Background**

The Magistrate Judge's opinion set out the background in detail. Briefly, in 1997, Morris's then-wife applied for and opened a revolving credit account at Target – the "RNB-Target" account – as a joint account. Morris did not know of the account and did not sign the application. In 2002, over a year after Morris and his wife divorced, she charged $129.91 to the account. The statement was mailed to Morris's home address, the address shown on the application. Morris forwarded the bill to his former wife, who had moved to Louisiana. Morris received a second statement showing the bill as unpaid and handled it the same way. Morris's former wife only paid $20 on the account. When Morris received another statement, he contacted RNB-Target and told them to deal with his former wife, explaining that the charge was not his and that he did not intend to pay it. RNB-Target nonetheless continued to send the statements to Morris, who threw them away. In May 2003, RNB Target notified Morris that it had closed the account and charged off the unpaid amount of

$253.10, including late fees and interest. RNB-Target stated that it had passed the information to national credit bureaus.

In July 2003, Morris received an adverse action letter on an automobile insurance quote. He downloaded a credit report that included information from three consumer reporting agencies, including Trans Union. The report listed Morris as jointly responsible for the RNB-Target account and showed the unpaid balance charged off as a bad debt.

Morris notified Trans Union in writing that the information in the credit report about the RNB-Target account was incorrect. Morris explained that the account should not have been treated as a joint account and that despite his request, Target had not provided any information showing that the account was in fact "ever a 'joint' account." Morris explained that the unpaid amount was charged by his former wife after their divorce and was never his responsibility. Morris explained that he had informed Target of this fact and asked Trans Union to correct the item and show it as disputed until then.

Trans Union sent an Automated Consumer Dispute Verification form to RNB-Target on July 30, 2003, identifying the disputed account and explaining the customer's dispute as in the category of "Consumer not liable for acct (i.e., ex-spouse, business)." Trans Union provided further explanation with the message: "ACCT NEVER JOINT." Trans Union's contract with RNB-Target required RNB-Target to provide "complete and accurate" information to Trans Union. In response to Trans Union's Automated Consumer Dispute Verification form, RNB-Target updated the date on which the information was reported, from June 2003 to August 2003. Trans Union notified Morris that RNB-Target had verified

the account as joint and made no changes to the account information. Morris was provided with instructions on how to obtain information on the investigation and how to submit a consumer statement about the dispute.

Morris wrote Trans Union a letter in August 2003, asking that a statement be included on his credit report giving his explanation of the Target account status and asking for information on the investigation procedure. In response, Trans Union sent RNB-Target another inquiry with additional explanation: "Not his/hers" and asked for "complete ID." RNB-Target answered by again verifying the information as reported. Trans Union replied to Morris by explaining the investigation procedure and providing the names and addresses of creditors reporting information on plaintiff and creditors who had asked for Morris's credit report.

In subsequent correspondence, Trans Union sent Morris more information on the creditors who had provided information about him and who had received credit reports. Trans Union refused to provide copies of the Automated Consumer Dispute Verification forms it had sent RNB-Target to obtain verification of the disputed account status. In January 2004, Morris filed suit. Shortly after filing suit, Morris filed a number of credit card applications and sought automobile insurance quotes. Most of the credit card applications were denied, but only one company identified the only basis of the denial as Trans Union's report, and that company offered Morris a secured alternative source of credit. A second company denied Morris's application based on information obtained from two consumer

reporting agencies in addition to Trans Union. One company granted Morris's application. The insurance quotes were provided without adverse action letters.

In January 2004, RNB-Target instructed Trans Union to remove the account from Morris's credit report. Morris reapplied for credit cards and received one from a company that had previously refused to issue it. This case was removed to federal court. After discovery, Trans Union moved for summary judgment.

The Magistrate Judge analyzed the statutory obligations and the summary judgment evidence. Trans Union had moved for summary judgment on the ground that, as a matter of law, the information in the credit report was accurate; the Magistrate Judge recommended denying his motion because Trans Union had failed to establish the accuracy of the joint responsibility status of the RNB-Target account. The Magistrate Judge accordingly analyzed Morris's allegations that Trans Union had violated statutory duties and caused Morris damages.

The Magistrate Judge recommended finding that although Trans Union failed to notify RNB-Target of Morris's dispute within the five-day statutory period, he suffered no harm from that breach because Trans Union complied with the statute by reporting the account status after reinvestigation within 30 days after receiving the notice of dispute, and that faster notice to RNB-Target would not have changed its response. The Magistrate Judge also recommended finding no willfulness because the record showed that Trans Union did not knowingly and intentionally delay notifying RNB-Target of Morris's dispute, with conscious disregard for his rights or with the intent to harm him. The Magistrate Judge recommended

finding that Trans Union's procedure of using Automated Consumer Dispute Verification forms to transmit information about a customer dispute and obtain either verification or correction of the account status met the statute because the procedure provided RNB-Target with the information about the dispute necessary for reinvestigation. Finally, the Magistrate Judge recommended finding that there was no heightened duty to investigate Morris's dispute beyond contacting RNB-Target and accepting its response. The Magistrate Judge recommended finding that the summary judgment record did not provide any basis to infer that Trans Union was "alerted to the possibility that RNB-Target was unreliable." To the contrary, the record showed that Trans Union had over ten years of experience with credit inquiries to RNB-Target, during which RNB-Target had consistently provided reliable information. The Magistrate Judge recommended finding that Trans Union met its obligation to perform a reasonable investigation. As to the state-law libel claim, the Magistrate Judge recommended finding that the libel claim should be summarily dismissed because there was as a matter of law no basis to raise a fact issue as to malice or willful intent to injure when Trans Union published the credit report.

**II.      Morris's Objections**

Morris has asserted sixteen objections to the Memorandum and Recommendation. Most of the objections are fully dealt with in the Magistrate Judge's Memorandum and Recommendation. Three areas merit some additional explanation: 1) damage causation; 2) reasonableness of the investigation; and 3) willfulness.

### A. Damage Causation

The Magistrate Judge recommended finding, as a matter of law, that Trans Union violated the FCRA only with regard to the requirement that it notify the creditor of a dispute within five days, but that the violation caused Morris no harm. Morris objects to the Magistrate Judge's findings to the extent that they require evidence linking a subsequent credit denial to a particular account and to the extent that they require evidence of a credit denial for proof of other elements of damage.

A consumer-reporting agency can be held liable for actual damages resulting from the agency's negligent failure to comply with the FCRA. *See* 15 U.S.C. § 1681o; *Stevenson v. TRW Inc.*, 987 F.2d 288, 292 (5th Cir. 1993). The statements in the Magistrate Judge's Memorandum and Recommendation to which Morris objects do not require a rejection of the result because those statements did not play a role in the Magistrate Judge's conclusion. That is, although the Magistrate Judge outlined damage causation requirements, she did not apply them in this case.

Morris is correct that an inaccurate report can cause damage to a consumer in addition to the denial of credit. Each element of damage must be linked to the consumer-reporting agency's failure to comply with its FCRA obligations. With respect to Trans Union's conceded failure to comply with the five-day rule, the evidence shows no ill effects or harm to Morris as a result. Despite the initial delay, Trans Union provided Morris a timely report of its investigation. The undisputed evidence demonstrates that the information contained within Morris's credit report after his complaint was the same as it would have been had

Trans Union initially given RNB-Target notice of Morris's dispute within the five-day statutory period. Morris's objections do not affect the outcome and do not lead this court to reject the Memorandum and Recommendation.

      **B.**      **The Reasonableness of the Investigation**

Morris also objects to the conclusion in the Memorandum and Recommendation that no reasonable jury could find Trans Union's investigation unreasonable. In particular, Morris urges this court to consider Trans Union's failure to provide Morris with copies of the Automated Consumer Dispute Verification form that Trans Union used to notify RNB-Target of the nature and basis of Morris's dispute; Trans Union's alleged misrepresentation that it contacted creditors by telephone; Trans Union's failure to provide Morris a telephone number for RNB-Target; Trans Union's failure to comply with the five-day rule; Trans Union's failure to provide RNB-Target with additional information regarding the dispute; and Trans Union's failure to investigate beyond the information it received from RNB-Target. Morris also disagrees with the Magistrate Judge's recommended finding that Trans Union lacked any reason to question RNB-Target's reliability.

The Magistrate Judge found Trans Union's investigation to be reasonable as a matter of law because, with the exception of not communicating the dispute to RNB-Target within five days of receiving notification from Morris, Trans Union complied with the statutory requirements and exceeded them in several respects. In the Memorandum and Recommendation, the Magistrate Judge examined the summary judgment record and found no evidence indicating that Trans Union had a reason to question RNB-Target's reliability

except for Morris's disagreement with the information provided. The FCRA imposes on consumer-reporting agencies a duty to conduct a reasonable investigation into any item a consumer disputes. 15 U.S.C. § 1681i(a)(1)(A); *see also Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986). The Fifth Circuit has recognized that an agency may have a duty to go beyond the creditor's response to a disputed item to conduct a reasonable investigation, but only under limited circumstances. *See Stevenson*, 987 F.2d at 293 (holding that, given the complexity of the consumer dispute, the consumer reporting agency acted unreasonably in relying solely on consumer dispute verification forms); *Pinner*, 805 F.2d at 1262 (holding that an agency's investigation was unreasonable where the only person contacted for verification was an individual who was known to have a poor personal relationship with the consumer). The Seventh Circuit has held that such a heightened duty is triggered only when the consumer alerts an agency to the possibility that the source may be unreliable or the agency itself knows or should know that the source is reliable, and the cost of verifying the accuracy of the source does not outweigh the possible harm to the consumer from the inaccuracy. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994).

      Morris's list of Trans Union's acts and omissions do not raise a fact issue as to the reasonableness of the investigation because they are not supported by the evidence, are irrelevant, and/or caused Morris no damage. On the issue of a heightened duty, this court agrees with Morris – and with the Magistrate Judge – that a reporting agency may have a duty to go beyond a creditor's response. Even under the Seventh Circuit's approach, such a heightened duty arises only when the evidence demonstrates that the agency has a basis for

9

questioning the reliability of the creditor's information. Under Fifth Circuit law, Morris's invective-laced railing against RNB-Target is not in itself sufficient to raise a fact issue as to whether Trans Union had a basis for questioning RNB-Target's reliability. The record shows that Trans Union had worked with RNB-Target for at least eleven years and had received no report that RNB-Target had provided unreliable information. The facts at issue here are very different from those at issue in *Stevenson*, 987 F.2d at 293, which involved a very complex consumer dispute, or in *Pinner*, 805 F.2d at 1262, which involved an agency that knew that the creditor's representative had an acrimonious personal relationship with the customer that could affect the accuracy of the information about the customer's credit. In this case, by contrast, the account dispute was simple; Trans Union communicated the dispute repeatedly, giving additional information each time; and RNB-Target, which had provided consistently reliable information for many years, reaffirmed the accuracy of the account information. Morris simply failed to raise a fact question as to whether Trans Union's knowledge of RNB-Target's reliability required Trans Union to conduct a different kind of investigation.

### C. Willfulness

Morris objects to the Magistrate Judge's recommended finding that the record did not disclose evidence of willfulness. Morris's objections center on Trans Union's alleged failure to develop policies or procedures regarding a creditor's reliability and the costs of verifying the creditor's information. Morris states, without citation:

> Despite the fact that the courts have repeatedly told Trans Union of the factors that can trigger its duties to do more than simply parrot the information it receives from a creditor, Trans Union does not have policies or procedures in place to determine (or even evaluate) when a consumer has alerted it to the possibility that its source may be unreliable or to determine (or even evaluate) in any given situation the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer.[1]

Morris cites his expert's opinion about Trans Union's policies and procedures as evidence of its conscious disregard for the rights of consumers. Morris also contends that Trans Union misrepresented that it would provide a creditor's telephone number if available because it knew RNB-Target's telephone number and did not provide it to Morris.

The Magistrate Judge recommended finding that Trans Union's investigation of Morris's dispute with RNB-Target complied with the FCRA in every respect except with regard to the initial delay in notifying RNB-Target of the dispute. Based on the lack of summary judgment evidence that the delay was knowing or intentional or that Trans Union misrepresented or concealed information from Morris, the Magistrate Judge recommended a finding of no willfulness on the ground that Trans Union did not act with conscious disregard of Morris's rights.

Willfulness is an element of proof necessary both to show entitlement to punitive damages under the FCRA and to overcome statutory qualified immunity from state-law defamation claims. Punitive damages are justified under the FCRA when the defendant

---

[1] Plaintiff's Objections, Docket Entry No. 58, p. 8.

"knowingly and intentionally committed an act in conscious disregard for the rights of others." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 372 (5th Cir. 2001) (quoting *Pinner*, 805 F.2d at 1263); *see also Stevenson*, 987 F.2d at 293. Under Fifth Circuit law, damages for willfulness are appropriate only on evidence that the defendant engaged in "willful misrepresentations or concealments." *Cousin*, 246 F.3d at 374; *Stevenson*, 987 F.2d at 294. A consumer credit agency is immune from defamation claims unless it reported false information with malice or willful intent to injure the consumer. 15 U.S.C. § 1681h(e); *see also Cousin,* 246 F.3d at 375.

There is neither a factual or legal basis to impose the obligations Morris identified on Trans Union or to find their absence a basis for liability. Morris asserts that Trans Union had the obligation to develop specific formal policies and procedures to measure or evaluate creditor reliability and to perform a cost-benefit analysis comparing in a given situation the cost of verifying the accuracy of the source of the credit information against the possible harm inaccurately reported information may cause the consumer. Even under the test imposed by the Seventh Circuit (which is more demanding than the Fifth Circuit has recognized, *see Henson*, 29 F.3d at 287), the absence of formal policies and procedures to evaluate a creditor's reliability does not show that a consumer-reporting agency acted in conscious disregard for a consumer's rights in a specific case. In this case, the record contains no evidence of material misrepresentations or concealment by Trans Union. The

summary judgment record shows that, as a matter of law, Trans Union did not violate its duty to perform a reasonable investigation into Morris's dispute. In the absence of a violation of the FCRA, there can be no finding of willful failure to comply with the statute. This court overrules objections numbered 2, 3, 4, 5, 6, 7, 8, 14, 15, and 16. This court has considered the other objections and finds none meritorious; those objections are also overruled. Trans Union's conditional objections are overruled as moot.

## III. Conclusion

This court adopts the Magistrate Judge's Memorandum and Recommendation. Trans Union's motion for summary judgment is granted. Morris's motion to strike Trans Union's motion for summary judgment is denied. Trans Union's motion to strike Morris's response evidence is denied. Morris's objections to Trans Union's summary judgment evidence are overruled. The remaining outstanding motions are denied as moot. Final judgment is entered by separate order.

SIGNED on February 23, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge